**\*NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUAN ZALAZAR, | : | |
| | : | Civil Action No. 14-8132 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STACEY KAMINSKI, et al., | : | |
| | : | |
| Defendants. | : | |

**WIGENTON**, District Judge:

This matter comes before the Court on the motions to dismiss Plaintiff Jaun Zalazar's complaint filed by the Department of Corrections ("DOC") Defendants[1], Susan Davis and Sherry Yates, (ECF No. 20) and the Department of Human Services ("DHS") Defendants, Shantay Adams, Merril Main, and Jacylen Ottino. (ECF No. 21). Plaintiff filed responses to both motions. (ECF Nos. 22, 24). On July 19, 2016, this Court entered an order requiring both sets of Defendants to file supplemental briefing addressing the applicability of the Third Circuit's recent ruling in *Thomas v. Christie*, --- F. App'x ---, 2016 WL 3771825 (3d Cir. 2016), to the motions before this Court. (ECF No. 26). Both sets of Defendants have filed responses to that Order (ECF Nos. 28, 29), to which Plaintiff has replied (ECF Nos. 30, 31). For the following reasons, this Court will grant the motions of both sets of Defendants and will dismiss Plaintiff's complaint without prejudice as to all Defendants other than Stacey Kaminski.

---

[1] The only DOC Defendant who has not moved to dismiss is Defendant Stacey Kaminski, who has, as of yet, not been served by Plaintiff. (*See* ECF No. 11).

## I. BACKGROUND

This Court previously summarized the basis for Plaintiff's claims as follows:

> Plaintiff, Juan Zalazar, is currently civilly committed to the East Jersey State Prison Special Treatment Unit (STU) in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator ("SVP") Act, N.J. Stat. Ann. § 30:4-27.24 *et seq.* Plaintiff alleges in his complaint that the rules and regulations through which the STU is managed are interfering with his receipt of the prescribed medical treatment with which he must comply in order to be released from the facility. (*Id.* at 4-8).[2] Plaintiff alleges that, on multiple occasions, Corrections officers lock down or otherwise temporarily imprison the civilly committed individuals for security reasons (such as while transporting individual detainees to medical or other housing units). (*Id.* at 9-19). Plaintiff alleges that while his housing unit is in lockdown, "treatment staff is told to leave the . . . unit" and treatment is either postponed or cancelled altogether for that day. (*Id.* at 9). Plaintiff alleges that this temporary cessation of treatment during lock up situations prevents him from receiving treatment and thus extends his term of commitment at the STU. (*Id.* at 12). Plaintiff provides several specific instances in which his unit was locked down for a variety of reasons, and treatment was postponed or cancelled as a result, including December 18 and 19, 2014. (*Id.* at 9-12).
>
> Plaintiff also alleges that the use of Modified Activities Program ("MAP") status by corrections officers in response to violations of policies and regulations further inhibits his treatment. (*Id.* at 12-13). Plaintiff alleges that MAP status, a five stage process during which an individual is placed on decreasingly severe levels of isolation over the course of numerous months, results in a complete cessation of treatment until the MAP status individual completes MAP and requests that he be placed back into a therapy group. (*Id.* at 13-15). In his "addendum" to his complaint, Plaintiff identifies a specific instance (January 8, 2015) in which he was placed on MAP status after a corrections lieutenant reported

---

[2] All page numbers as to ECF No. 1 refer to the Clerk's PageID numbers, as Plaintiff has two sets of page numbers in his filing.

2

>him for "personal reasons." (Addendum, Attached as Document 1 to ECF No. 2, at 1). Plaintiff alleges that these MAP placements are the result of charges brought by corrections officers, as enforced under DOC policies, on false pretenses, and that he is unable to call witnesses in his defense in response to the officers' allegations. (*Id.* at 2).

(ECF No. 4 at 1-2).

In his complaint, Plaintiff names numerous Defendants, each a supervisory figure at the STU employed by either the DOC or the DHS. (ECF No. 1 at 3-8). The first Defendant named by Plaintiff is Stacey Kaminski, the Administrative Major for the DOC, who he claims authored the policy which requires that treatment be cancelled during security lock downs. (*Id.* at 3-4). Plaintiff then names Merril Main, the Clinical Director of the STU and chief DHS authority at the facility. (*Id.* at 4). Plaintiff asserts that, while he was not the source of the challenged policy, Main "allowed" corrections officers to interfere with treatment through lockups and that Main "overlooked" the misuse of M.A.P. by corrections officers. (*Id.*). Plaintiff also names as a Defendant Sarah[3] Davis, the DOC's assistant superintendent for the STU. Plaintiff asserts that Davis "authorized" corrections officers to interfere with the running of treatment, presumably by engaging in security lockdowns, and told Plaintiff to draft an administrative complaint if he wished to complain about the situation. (*Id.* at 5). Plaintiff next names Sherry Yates, the Superintendent of the STU employed by the DOC. (*Id.*). According to Plaintiff, Ms. Yates "failed to properly train" corrections officers to "over-see civilly committed residents" in a fashion different from that

---

[3] Plaintiff named Ms. Davis as "Susan" Davis in his complaint. (*See* ECF No. 1 at 5, Document 1 attached to ECF No. 20 at 1).

used for dealing with criminal prisoners.[4] (*Id.*). Plaintiff also names as a Defendant Shantay Adams, a unit director at the STU employed by the DHS. (*Id.* at 6). According to the complaint, Adams "acknowledg[es]" the "massive interference" the DOC lock down policies present to clinical treatment but has not corrected the problem, instead stating to Plaintiff that the DHS does not interfere with the DOC's operation of the facility. (*Id.*). The final named Defendant is Jacylen Ottino, the Program Coordinator of the M.A.P. Unit, who is apparently a DHS employee. According to Plaintiff, Ms. Ottino "knows" that corrections officers "fabricate" reasons to place him and others on M.A.P. status and has not corrected the issue. Plaintiff also asserts that Ottino does not allow him to call witneses or have a hearing before being placed on M.A.P. status, instead asserting that M.A.P. is not a punishment but is instead a therapeutic issue. (*Id.* at 6-7).

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic

---

[4] In his complaint, Plaintiff specifically takes issue with the application of the DOC's use of force policy against SVPs, but does not detail this policy nor explain how the use of force policy affects the claims he presents. The use of force policy does not appear to be the same policy as that which requires the cancellation of treatment during lock downs.

recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).

**B. Analysis**

Defendants have moved to dismiss both of Plaintiff's claims for violations of his federal Due Process rights pursuant to the federal civil rights statute, 42 U.S.C. § 1983. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person who was acting under the color of state law at the time that the alleged deprivation occurred. *Id.* When called upon to evaluate a claim under § 1983, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff essentially asserts two kinds of Due Process claims – first, that his Substantive Due Process Rights have been violated by a DOC policy which prevents him from receiving treatment during security lock downs, and second that his Procedural Due Process rights

5

have been violated because he has not been given an opportunity to be heard to challenge his placement on M.A.P. status based on complaints made by unnamed corrections officers.

Before addressing any of Petitioner's specific claims, this Court must note that all of the Defendants Plaintiff seeks to name are supervisory officials at the STU, and were not, according to the complaint, directly involved in locking down Plaintiff's unit at the facility. Plaintiff likewise does not allege that any of the Defendants actually placed him on M.A.P. status themselves, but rather asserts that he was not provided with proper procedures with which to challenge his placement on M.A.P. status. Because Plaintiff seeks to raise his claims against supervisory officials, his claims face the extra hurdle that he must connect each Defendant to the violations of his rights he asserts. This is so because a "defendant in a civil rights action must have personal involvement in the alleged wrongs" and a plaintiff must therefore plead a supervisory defendant's involvement in the alleged violation through means other than vicarious liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Generally, this requires a plaintiff to show each supervisor's participation in the alleged wrong by pleading either that the supervisor's "establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, Civil Action No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 Plaintiff pleading supervisory liability

6

must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable"). Claims based on a failure to train subordinates generally arise as a species of policy based claims. *Barkes*, 766 F.3d at 316-19. In order to state a supervisory claim based on a policy put into place by that supervisor, the plaintiff must generally identify a policy that the supervisor either implemented or failed to implement, and plead facts which would show that the policy created an unreasonable risk of a constitutional violation, the defendant was aware of this risk and was indifferent to it, and the policy or failure to create a policy in question caused the injury about which the Plaintiff complains. *Id.* at 330; *see also Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).

### 1. Plaintiff's Substantive Due Process Claim

Plaintiff's chief claim in this matter is his assertion that the DOC lockdown policy, which prevents SVPs from receiving treatment while a security lockdown is in place, denies him his Substantive Due Process right to receive treatment while civilly committed as an SVP. In so doing, Petitioner has essentially attempted to track the claim raised in *Thomas*. As the Third Circuit explained in *Thomas*, an SVP can state a claim for a denial of substantive Due Process through a reduction of treatment for non-medical reasons against a supervisory official by pleading facts which would permit the Court to infer that "(a) [the] supervising officials make systemwide determinations, (b) these determinations become the moving force behind the circumstances under which the subordinate officers effectively have no choice but to deny/reduce/change an inmate's prescribed medical/mental treatment for non-medical reasons; and (c) such denial/reduction/change in prescribed treatment was foreseeable under the systemwide

7

determinations the supervisors made." *Thomas*, 2016 WL 3771825 at *3.  Essentially, such a claim is a supervisory liability claim based on the creation of a policy which results in a reduction in prescribed medical treatment.

Here, Petitioner claims that there is a policy put into place which reduces his prescribed medical treatment whenever there is a security lock down or prisoner movement because DOC officers prevent treatment groups from occurring during a lock down.  Petitioner has thus identified, albeit roughly, a policy or systemwide determination applicable to the SVPs in his facility, and has pled that, under the policy, both DOC officers and DHS treatment staff are unable to provide the normal course of treatment during a security lockdown.  Even granting that one could infer that such a policy would inevitably result in a denial of at least some treatment or that a violation of Plaintiff's rights were foreseeable, Plaintiff's claims against most of the Defendants he names suffer from a single unifying weakness – Plaintiff places responsibility for this systemwide determination, and the creation of this alleged DOC policy, at the feet of Stacey Kaminski, a named Defendant who Plaintiff has failed to serve.  While Plaintiff has pled that the other Defendants are aware of the policy, and are aware of its negative effects, and has asserted that they have essentially told him that he must raise the issue with the DOC as it is a DOC policy which they cannot control, Plaintiff has not pled that the other Defendants were involved in the creation, enforcement, or application of this policy.  Thus, Plaintiff has failed to set forth a claim for relief against all Defendants other than Kaminski because he has failed to allege facts showing the personal involvement of the other Defendants in the creation and application of the policy in question or facts which would permit the Court to infer that they could somehow override the DOC

8

policy and failed to implement such an override.[5]  *Id.*at *3; *see also Barkes*, 766 F.3d at 316-19; *Rode*, 845 F.2d at 1207-08.  This Court therefore dismisses Plaintiff's Substantive Due Process claim without prejudice as to all Defendants other than Kaminski at this time.  Because this Court concludes that Plaintiff has pled enough facts to permit the Court to infer a plausible claim for relief against Kaminski, and because Plaintiff could conceivably plead additional facts connecting some of the other Defendants to the creation of the policy in question, this Court will dismiss Plaintiff's claims as to the non-Kaminski Defendants without prejudice.

## 2. Plaintiff's Procedural Due Process Claim

The other claim Defendants seek to have dismissed is Plaintiff's claim that his placement on MAP status without a hearing or opportunity to challenge the basis for his placement in that status violates his Procedural Due Process rights.  The inherent problem with this claim, however, is that a right to the procedural protections of the Due Process Clause only attaches if a plaintiff has a cognizable liberty interest which is being impugned by the action being taken against him. *See, e.g., Deavers v. Santiago*, 243 F. App'x 719, 721-22 (3d Cir. 2007).  As the Third Circuit explained in *Deavers*,

> In *Sandin* [*v. Conner*, 515 U.S. 472 (1995)], the Supreme Court determined that there was no cognizable liberty interest in freedom from additional restraint in a prison setting. *See* [*Id.* at 486] ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a

---

[5] The only alternative basis for supervisory relief Plaintiff attempts to plead is his assertion that certain DOC Defendants "failed to train" their subordinates on how to deal with SVPs rather than incarcerated prisoners.  Plaintiff, however, provides no more than a conclusory allegation as to this alleged failure to train, and does not identify what, other than the lock down policy, has caused him alleged injury, and thus has not plausibly pled a failure to train.

> State might conceivably create a liberty interest."). Put another way, unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded any process at all prior to deprivations beyond that incident to normal prison life. Our Court later extended *Sandin's* foreclosure of procedural due process protections to a situation like that presented here-a plaintiff civilly committed in New Jersey claiming a procedural due process violation by his wrongful placement [on MAP status]. *See Leamer* [*v. Fauver*], 288 F.3d [532,] 546 [(3d Cir. 2002)]; *see also Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002) (likewise extending *Sandin* to civil commitment settings).

*Deavers*, 243 F. App'x at 721-22. Here, Plaintiff has pled no facts which suggest that his placement on MAP status was in some way an extreme deviation from the everyday nature of his civil commitment. Although Plaintiff's MAP placement did result in his briefly being placed in temporary close custody before being returned to room and tier level MAP status, Plaintiff pleads no facts which suggest that this time on close custody in any way extended for a time so lengthy that it would amount to an extreme divergence from the normal nature of civil commitment. As such, Plaintiff has failed to plead any facts which would suggest that he had a cognizable liberty interest in avoiding MAP placement, and he was therefore not entitled to Procedural Due Process before being placed on MAP status. *Id.* As such, Plaintiff's Procedural Due Process claim must be dismissed without prejudice at this time as to all Defendants.[6]   *Id.*

Because this Court is dismissing Plaintiff's Procedural Due Process claim against all Defendants and Plaintiff's Substantive Due Process claim against all moving Defendants, the only Defendant who remains in this action, and the only Defendant against whom Plaintiff has pled a claim, is Stacey Kaminski. As this Court has noted, however, Plaintiff has failed to serve

---

[6] Because this Court is dismissing all of Plaintiff's claims without prejudice as to all moving Defendants, this Court need not reach Defendants' qualified immunity arguments.

Kaminski despite the fact that this matter has been ongoing for nearly two years. Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff normally must serve all Defendants within 120 days[7] after his complaint is deemed filed. Where a Plaintiff fails to serve a Defendant within that period of time, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against [any unserved defendant] or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Only if a Plaintiff shows good cause for his failure to serve all Defendants will that time period be extended. *Id.* In this matter, Plaintiff made one attempt to have the U.S. Marshals serve Kaminski after this Court proceeded his complaint, which resulted in the summons being returned unexecuted. (ECF No. 11). Plaintiff has made no further attempts at service. Based on this history, this Court will, pursuant to Rule 4(m), require Plaintiff to serve Kaminski within forty-five days or have his claims against Kaminski dismissed without prejudice.

**III. CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss shall be GRANTED, Plaintiff's Substantive Due Process Claim shall be DISMISSED WITHOUT PREJUDICE as to all Defendants except Stacey Kaminski, and Plaintiff's Procedural Due Process Claim shall be DISMISSED WITHOUT PREJUDICE as to all Defendants. Plaintiff is granted leave, however, to file an amended complaint addressing the deficiencies raised in this Opinion within forty-five days. Finally, Plaintiff shall serve Defendant Kaminski within forty-five days, and any failure to

---

[7] Rule 4(m) was amended after this action was permitted to proceed and the 120 day time limit was reduced to 90 days.

so serve Kaminski shall result in Plaintiff's claims against Kaminski being dismissed without prejudice pursuant to Rule 4(m).   An appropriate order follows.


Dated: September 26, 2016                               _*s/ Susan D. Wigenton*____
                                                                              Hon. Susan D. Wigenton,
                                                                              United States District Judge